CHRISTOPHER J. CARLBERG, CALIFORNIA STATE BAR NO. 269242
ASSISTANT CHIEF
ELENA A. GOLDSTEIN, CALIFORNIA STATE BAR NO. 344434
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION, SAN FRANCISCO OFFICE
450 GOLDEN GATE AVENUE
BOX 36046, ROOM 10-0101
SAN FRANCISCO, CA 94102-3478
TELEPHONE: (415) 934-5300
FACSIMILE: (415) 934-5399

JUSTIN D. WHATCOTT, IDAHO BAR NO. 6444
ACTING UNITED STATES ATTORNEY
SEAN M. MAZOROL, DISTRICT OF COLUMBIA BAR NO. 90025737
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE STREET, SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KRIS BIRD, <br><br> Defendant. | Case No.  1:23-cr-00326-AKB-2 <br><br> **ELEMENTS AND FACTUAL BASIS** |

**ELEMENTS AND FACTUAL BASIS – 1**

The Government submits the following elements and factual basis in support of the change of plea for Defendant Kris Bird.

A.   **Elements of the Crime.**

The elements of the crime of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, as charged in Count One of the Indictment as to the Defendant, are as follows:

   1.   First, beginning in or about February 2014, and ending in or about March 2023, there was an agreement between two or more persons to commit wire fraud in violation of 18 U.S.C. § 1343; and

   2.   The Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The elements of the crime of Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Counts Two, Three, Four, Five, and Six of the Indictment as to the Defendant, are as follows:

   1.   The Defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

   2.   The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

   3.   The Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

   4.   The Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**ELEMENTS AND FACTUAL BASIS – 2**

The elements of the crime of Conspiracy in Restraint of Trade: Bid Rigging and Territorial Allocation, in violation of 15 U.S.C. § 1, as charged in Count Seven of the Indictment as to the Defendant, are as follows:

1. A bid-rigging and territorial allocation combination or conspiracy to suppress or eliminate competition for fuel truck[1] contracts with the U.S. Forest Service existed from at least as early as February 2014 until in or about March 2023;

2. The Defendant knowingly joined the conspiracy; and

3. The conspiracy either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods or services.

B. **Factual Basis.** The Defendant admits the following facts are true:

At all times relevant to the Indictment, the Defendant and his company contracted to provide wildfire fuel truck services for certain dispatch centers of the U.S. Forest Service's Great Basin wildfire dispatch region (Region 4) ("the relevant market").[2] The U.S. Forest Service is a department and agency of the U.S. Department of Agriculture.

From at least as early as February 2014 until in or about March 2023, in the District of Idaho and elsewhere, the Defendant knowingly entered into and engaged in a combination and conspiracy to eliminate competition between the Defendant and Ike Tomlinson, and to suppress competition, by rigging bids and allocating territories in the relevant market ("the bid-rigging and territorial allocation conspiracy"). And, from at least as early as February 2014 until in or

---

[1] "Fuel truck" is a common term for "fuel tenders" that support wildfire-fighting efforts.
[2] Region 4 dispatch centers included, among others: (1) Boise Interagency Dispatch Center (ID-BDC or Boise); (2) Central Idaho Interagency Fire Center (ID-CIC or Salmon); (3) Eastern Idaho Interagency Fire Center (ID-EIC or Idaho Falls); (4) Payette National Forest Dispatch (ID-PAC, Payette, or McCall); (5) South Idaho Interagency Dispatch Center (ID-SCC, Shoshone, or South Central); (6) Elko Interagency Dispatch Center (NV-EIC or Elko); and (7) Central Nevada Interagency Dispatch Center (NV-CNC).

**ELEMENTS AND FACTUAL BASIS – 3**

about March 2023, in the District of Idaho and elsewhere, the Defendant and Tomlinson also did knowingly and intentionally combine, conspire, confederate, and agree together and with each other, to commit wire fraud in violation of 18 U.S.C. § 1343 ("the conspiracy to commit wire fraud"). Tomlinson, his companies (Co-Conspirator Company A and Co-Conspirator Company B), and Co-Conspirator Individual 1 all conspired with the Defendant and his company (Co-Conspirator Company C). The Defendant led, acted on behalf of, and owned Co-Conspirator Company C, which competed with Tomlinson and his companies in the relevant market.

Starting at least as early as February 2014, the Defendant and Tomlinson conspired to commit wire fraud and rig bids for wildfire fuel truck services for the Boise and Salmon dispatch centers. Specifically, the Defendant and Tomlinson agreed on the bids (also known as "quotes") they would submit to the U.S. Forest Service in order to (1) avoid bidding against each other with respect to certain dispatch centers or (2) deliberately bid at a higher or lower daily rate to determine who would win priority on a dispatch center's dispatch priority list, which determined who would first receive business from the U.S. Forest Service (and other federal agencies) in the event of a wildfire in a specific geographic area. During the charged time periods, the Defendant caused the completion and submission of all of his company's federal contracting certifications. These included the company's annual certificates of independent price determination submitted through the United States' System for Award Management (SAM). The company's annual certifications falsely stated that (1) the company or its principals would not share any bid prices with competitors, and (2) no attempt had been made or would be made to induce any other concern to submit or not to submit a bid for the purpose of restricting competition. These annual certifications were materially false representations to the U.S. Forest Service that were intended to cause and did cause the U.S. Forest Service to pay inflated daily rates.

**ELEMENTS AND FACTUAL BASIS – 4**

By March 2020, the bid-rigging and territorial allocation conspiracy had expanded to include the Idaho Falls, Elko, and Central Nevada dispatch centers, and by March 2023, the Payette and Shoshone dispatch centers. In 2022, for example, the Defendant texted with Tomlinson regarding bids for the Boise, Salmon, Idaho Falls, and Elko dispatch centers. Tomlinson first texted the Defendant a proposal including bid prices, truck types, and dispatch centers. The Defendant responded, "I put my type 2 in salmon at 2649. Last year it was 2549. I put Elko at 2800. Thanks[.]" Through these text messages and phone calls with the Defendant, Tomlinson and the Defendant agreed that, in 2022, the Defendant would bid higher than Tomlinson on fuel truck contracts serving the Boise dispatch center so that Tomlinson could win higher priority in Boise. Specifically, the Defendant agreed that he would submit a bid of $2900 daily rate so that Tomlinson would be first on Boise's dispatch priority list. Ultimately, Tomlinson's Co-Conspirator Company A was awarded a daily rate of $2890 in Boise, $10 below the daily rate awarded to the Defendant's Co-Conspirator Company C.

Further, in 2023, the Defendant, Tomlinson, and the person identified in the Indictment (Dkt. 2) as Co-Conspirator Individual 1 participated in conversations in which they agreed to rig bids for the purpose of de-prioritizing two competing fuel truck vendors on dispatch priority lists and thus excluding them from the market. The participants coordinated their bids to "squeeze," "drown," "punch," "low ball," and de-prioritize the two competing vendors on the dispatch priority lists. For example, on March 17, 2023, the Defendant, Tomlinson, and Co-Conspirator Individual 1 participated in a phone call in which they agreed on bid prices intended to de-prioritize a competing fuel truck vendor. On the call, the Defendant, Tomlinson, and Co-Conspirator Individual 1 agreed that Bird would put a Type 3 truck in Idaho Falls, as the Defendant said, "just in case [the competing vendor] does" with the goal of trying to "squeeze

him out." The agreement therefore was that the Defendant, Tomlinson, and Co-Conspirator Individual 1 would try to exclude the competing vendor from the market. Near the end of this phone call, the Defendant referred to the bid prices the participants had agreed upon. The Defendant said, "before I send this off, I'll send you a copy, just so that we, we didn't screw up and . . . we'll double check and make sure it looks good." Tomlinson responded, "Sounds good. Thanks."

To carry out the conspiracies defined above, the Defendant and Tomlinson spoke over the phone to agree on their bids. Their phone calls in furtherance of the conspiracies defined above took place each year—both before the relevant bidding deadlines and during fire season—from at least in or about February 2014 until in or about March 2023.

In addition, in at least 2017, 2020, 2022, and 2023, the Defendant sent and received text messages in furtherance of the conspiracies defined above. Shortly before the bidding deadline in 2017, for example, Tomlinson texted the Defendant a proposal on how they would bid on fuel trucks for the Boise and Salmon dispatch centers. Tomlinson then asked the Defendant, "Sound ok?" The Defendant responded, "Looks great."

The bid-rigging and territorial allocation conspiracy occurred within the flow of, and substantially affected, interstate trade and commerce. For instance, the Defendant and his co-conspirators engaged in activities including: (1) entering into fuel truck contracts subject to the conspiracy with the U.S. Forest Service, a federal agency with its headquarters in Washington, D.C.; (2) receiving payments related to those fuel truck contracts from the U.S. Forest Service's federal funds, and other federal agencies, including bureaus within the U.S. Department of the Interior; (3) causing the transmission of substantial sums of money across state lines in connection with those contracts; (4) operating in multiple states, including Idaho, Nevada, and

elsewhere; and (5) traveling across state lines to provide fuel truck services on contracts that had been the subject of the Defendant and Tomlinson's conspiracy. Lastly, the volume of commerce attributable to the Defendant related to the bid-rigging and territorial allocation conspiracy was more than $1,000,000, but less than $10,000,000.

Any and all payments received from the U.S. Department of Agriculture to bank accounts belonging to Co-Conspirator Company A, Co-Conspirator Company B, and Co-Conspirator Company C from at least in or about February 2014 until in or about March 2023, were received via interstate automated clearing house (ACH) transfers, which are interstate wire communications. These ACH transfers, include, but are not limited to, the following payments, which are interstate wire communications and were essential to carrying out the scheme to defraud:

1. $26,970.28 ACH transfer from Department of Agriculture to Co-Conspirator Company C bank account on or about September 9, 2019.

2. $62,820.84 ACH transfer from Department of Agriculture to Co-Conspirator Company B bank account on or about September 7, 2022.

3. $38,308.92 ACH transfer from Department of Agriculture to Co-Conspirator Company C bank account on or about October 4, 2022.

4. $55,095.11 ACH transfer from Department of Agriculture to Co-Conspirator Company B bank account on or about October 12, 2022.

5. $39,605.96 ACH transfer from Department of Agriculture to Co-Conspirator Company B bank account on or about January 3, 2023.

**ELEMENTS AND FACTUAL BASIS – 7**

Respectfully submitted this 25th day of March 2025.

                        JUSTIN D. WHATCOTT
                        ACTING UNITED STATES ATTORNEY

                        By:

                        */s/ Sean M. Mazorol*
                        SEAN M. MAZOROL
                        Assistant United States Attorney

                        */s/ Christopher Carlberg*
                        CHRISTOPHER J. CARLBERG
                        Assistant Chief
                        ELENA A. GOLDSTEIN
                        Trial Attorney